IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

|  |  |
|---|---|
| RAYMOND A. POSANTE, | Case No. 4:10-cv-00055 |
| Plaintiff, |  |
| v. | **MEMORANDUM OPINION** |
| LIFEPOINT HOSPITALS, INC., and DANVILLE REGIONAL MEDICAL CENTER, LLC, | By: Jackson L. Kiser<br>Senior United States District Judge |
| Defendants. |  |

Before me is Defendants' Motion for Summary Judgment, which was filed with the Court on July 18, 2011. Plaintiff filed a Memorandum in Opposition on August 1, 2011, and Defendants followed by filing their Reply on August 8, 2011. On August 16, 2011, I heard impassioned oral argument from both sides outlining their respective positions on the law, the facts, and the nature and extent of the record. Having thoroughly reviewed the briefs, the record, and the arguments of counsel, the matter is now ripe for decision. For the reasons stated below, I will **GRANT** the Motion for Summary Judgment as to both Defendants on all counts.

## I. STATEMENT OF FACTS

Plaintiff is HIV-positive.[1] HIV, or human immunodeficiency virus, is undoubtedly a debilitating condition that adversely affects Mr. Posante and the many like him who live day-to-day with the disease. In 2004, Plaintiff applied for a position as a unit secretary with Defendant Danville Regional Medical Center, LLC ("DRMC"). During his interview, he inquired as to whether the position would require him to engage in direct patient contact. Although he did not

---

[1] At oral argument on the Motion, it was adduced that Plaintiff also suffers from Hodgkin's Lymphoma, chronic obstructive pulmonary disease (commonly referred to as COPD), and heart disease. There is no allegation, however, that Plaintiff suffered from these additional ailments during his employment at DRMC.

state his reason for asking, Plaintiff's HIV leaves him with a weakened immune system, making him more susceptible to illness, and making common illness a bigger threat to his overall health. Presumably, he eschewed direct patient contact out of legitimate concern for his own well-being. He was told that the position would "absolutely not" require direct patient care. At this point and not before, he informed his potential employer that he was HIV-positive:

> At the end of our interview, she told me she would like to go ahead and get a process and get me hired, and I asked her then, I said, Now is this direct patient care? And she said, Absolutely not, your duties are secretarial work at the desk. And I disclosed to her, I said, Well, between you and I, I am HIV and don't want to do direct patient care, so therefore, if this job requires direct patient care, I am sorry, I am not interested. And she reassured me that no, there is no direct patient care.

(Raymond Posante Dep. 22:24-23:10, May 3, 2011.) Plaintiff began his position as a unit secretary on April 19, 2004.

Plaintiff's position could not be performed remotely; he had to be present in the hospital to perform his duties. As a unit secretary, he was responsible for staffing the desk, answering the telephone, and facilitating other administrative needs of the doctors, nurses, and staffers on his unit. When the secretary position was not staffed, nurses and other personnel were required to cover those duties. Needless to say, regular attendance was necessary to perform the job adequately.

While working for DRMC, Plaintiff had severe attendance issues. On brief and at argument, he conceded that he was unable—as a result of his health—to perform the position as it was originally scheduled. (See Pl.'s Br. in Opp. pg. 6 ["Posante was unable to continue working the demanding schedule due to his HIV."].) In an effort to ameliorate his well-documented and uncontested attendance problems, Plaintiff's physician requested in writing that Plaintiff work no more than eight hours at a time and no more than three times per week.

- 2 -

Case 4:10-cv-00055-JLK   Document 46   Filed 08/23/11   Page 2 of 16   Pageid#: 583

Plaintiff avers that he first submitted this request in May 2006 (see Posante Dep. Ex. 23), but no substantive change was made to his schedule.[2] He submitted an identical request again in January 2007, at which time it was apparently granted.

Plaintiff also contends that, while he was employed at DRMC, he routinely had to use the phone on his desk. As a result of his weakened immune system, he was understandably worried about other employees using this phone. He asserts that several of his co-workers used his phone while suffering from the common cold and even mononucleosis. In an effort to protect himself from such illnesses, he requested a personal phone for his exclusive use. While DRMC did not grant his request, they did provide him with alcohol wipes that he could—and did—use to sanitize his phone prior to use. Plaintiff has pointed to no evidence to establish or even suggest that he ever *actually* suffered an illness or was forced to miss work as a result of a co-worker's use of his phone.

On December 4, 2006, Plaintiff supervisor asked him to assist cleaning a patient after the patient evacuated his bowels. Despite being told that he would not engage in direct patient care, Plaintiff acquiesced to his supervisor's request. As a result, his received a Written Warning from Human Resources that he was "not to participate outside [of his] job description." (Posante Dep. Ex. 24.) The supervisor who requested Plaintiff's assistance was likewise reprimanded. (See Posante Dep. Ex. 44.) Following the incident, Plaintiff complained to his supervisors about being asked to engage in hands-on, direct patient care.

Finally, Plaintiff contends that his supervisors informed his co-workers that he was HIV-positive while he was employed at DRMC. As a result, he was forced to overhear his co-workers asking questions such as, "Can I catch HIV from using his phone?" He also heard

---

[2] Plaintiff contends that he was labeled "part time," but that his schedule persisted with full-time hours.

comments from co-workers regarding his presumed sexual orientation. One of his co-workers also said at some point, "Someone should wire his mouth shut."

In January 2007, DRMC relented and Plaintiff's supervisors finally did as they said they would alter his schedule to have Plaintiff only work three eight-hour shifts per week. Even on his reduced, part-time schedule, however, Plaintiff continued to miss work as a result of his illness. According to Defendants, the records indicate that, between January 2007 and his termination, Plaintiff was scheduled to work four shifts in a single week only once.[3] That week, he was able to and did attend all four shifts. During other weeks when he was scheduled for three or fewer shifts, however, Plaintiff continued to miss work without warning or notice. Ultimately, Plaintiff was terminated on April 24, 2007, because of his absenteeism.

## II.   PROCEDURAL BACKGROUND

Plaintiff began working for Defendant DRMC on April 19, 2004; he was terminated by DRMC on April 24, 2007. He filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 21, 2007. When a conciliation was not reached through the EEOC, Plaintiff received his "Right to Sue" letter on September 21, 2010. He filed a *pro se* Complaint with this Court on November 1, 2010, within the ninety day statutory window. [ECF No. 3.] After Defendant DRMC filed its Answer [ECF No. 6], Plaintiff retained counsel, sought leave to file an Amended Complaint, and did so on March 24, 2011. [ECF No. 17.] Defendant DRMC answered on March 28, 2011 [ECF No. 20], and following discovery, both Defendants filed for Summary Judgment on July 18, 2011. [ECF Nos. 32 & 33.]

---

[3] The evidence submitted with Kris Clatanoff's declaration omits attendance records for the month of March 2007. (See Kris Clatanoff Decl. Ex. A.) The missing page was provided as Exhibit 1 to Defendants' Reply Brief. Nevertheless, on brief and at oral argument, Plaintiff's counsel took no issue with Defendants' characterization of his attendance, and produced no contrary evidence to suggest Defendants' representations regarding his work schedule were anything less than accurate.

Plaintiff filed his response on August 1, 2011. [ECF Nos. 39 & 40.] After Defendants filed their reply [ECF No. 42], I heard oral arguments from both parties on August 16, 2011.

### III.    STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The court must view the facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The moving party has the initial burden of pointing out to the court the deficiency in the non-movant's case that would make it impossible for a reasonable fact-finder to return a verdict in the non-movant's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A movant-defendant may show that he is entitled to judgment as a matter of law by demonstrating that the non-movant plaintiff could not prove an essential element of his case. Id. at 322-23. It is then up to the non-movant to demonstrate to the court that there are genuine issues of material fact and that he has made a sufficient showing on each of the essential elements of his case. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Therefore, summary judgment is appropriate when the moving party points out a *lack* of evidence to support an essential element of his or her claim. See Blair v. Collonas Shipyards Inc., 52 F. Supp. 2d 687, 692 (E.D.Va. 1999), aff'd 203 F.3d 819 (4th Cir. 2000).

## IV.   DISCUSSION

At the outset, there appears to be a tension between the Amended Complaint and the matters raised in Defendants' Motion for Summary Judgment. The Amended Complaint states *two* counts against the Defendants: failure to accommodate (see Compl. ¶ 35) and retaliation (see id. ¶ 42), both in violation of the Americans with Disabilities Act ("ADA" or "the Act"). In their brief and at oral argument, counsel for both parties proceeded as if *three* distinct counts had been raised: hostile work environment, failure to accommodate, and retaliation. Although my review of the Complaint does not reveal a hostile work environment claim, the claim is mentioned in conclusory fashion in the Complaint (id. ¶ 17), and all parties have proceeded as if it was pled. Therefore, I will proceed as if all three causes of action were properly raised.

### A.   LifePoint Was Not Plaintiff's Employer

Plaintiff sued both DRMC and LifePoint Hospitals, Inc. ("LifePoint") in his Amended Complaint. In their Motion for Summary Judgment, Defendants assert that LifePoint was not Plaintiff's employer, but DRMC was. LifePoint's only connection to Plaintiff is its relationship to DRMC—LifePoint is DRMC's great-grandparent corporation. [See DRMC Positive Corporation Disclosure Statement, ECF No. 5.]  "A parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity." Johnson v. Flowers Indus., Inc., 814 F.2d 978, 982 (4th Cir. 1987). Under the ADA, only an employer is liable for a violation of the Act. See 42 U.S.C. § 12112(a) (2010) ("No covered entity shall discriminate against a qualified individual on the basis of disability . . . ."); id. § 12111(2) (defining "covered entity" as "an employer."). Here, the only evidence regarding LifePoint's role in DRMC's employment decisions is the declaration of Kris Clatanoff, DRMC's Director of Human

- 6 -

Resources. He states that "DRMC makes its own personnel decisions and has its own management and personnel." (Clatanoff Dec. ¶ 3.) Plaintiff has failed to point to any evidence that LifePoint, in addition to DMRC, was Plaintiff's employer. See Catrett, 477 U.S. at 325 (noting that summary judgment is appropriate where it is shown that a party lacks the evidence to carry his burden at trial). Because there is no evidence to support the conclusion that LifePoint was Plaintiff's employer or controlled his employment in any regard, LifePoint is entitled to summary judgment on all counts arising under the ADA.[4] Cf. Hager v. First Virginia Banks, Inc., Case No. 7:01-cv-00053, 2002 WL 57249, at *4-5 (W.D.Va. Jan. 10, 2002) (unpublished) (noting that, in an ADA case, if a defendant is not the plaintiff's employer, then the ADA claim must fail).

      B.      <u>The Relevant Time Period Begins in January</u>

For the first time in its reply brief and again at oral argument,[5] Defendants contend that Plaintiff's claims are limited to the three-hundred-day window immediately preceding the filing of his EEOC Charge of Discrimination. See Williams v. Giant Food, Inc., 370 F.3d 423, 428 (4th Cir. 2004) (barring claims based on action that occurred more than 300 days before the plaintiff filed her EEOC charge). Plaintiff briefly countered by referencing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), a case that espouses and clarifies the "continuing violation" doctrine. Simply put, Morgan stands for the proposition that, when pursuing a claim for hostile work environment, a plaintiff is not limited to only those actions occurring within the 180- or 300-day window prior to his Charge of Discrimination. Rather, so long as at least one discrete act contributing to the alleged hostile work environment occurred within the applicable window, he or she may rely on acts that occurred outside the window to

---

[4] Had LifePoint been Plaintiff's employer, it would also be entitled to summary judgment on the same grounds and for the same reasons as DRMC. Those reasons are explained in depth herein.

[5] The defense was preserved by DRMC in its Answer. (See Ans. to Am. Compl. "Ninth Defense.")

establish his or her claim. See id. at 118-19. Unfortunately for Plaintiff, the "continuing violation" doctrine exception does not, in this case, allow him to use any actions that occurred outside the 300-day window to prove his case for two reasons.

First, the Morgan exception only applies to hostile work environment claims; therefore, it has no bearing on Plaintiff's claims of retaliation or failure to accommodate. See id. at 105, 110 ("We hold that [Title VII] precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period. . . . A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.").[6] As stated in Morgan, this exception exists because a hostile work environment, although made up of discrete discriminatory acts, is actually a single unlawful employment practice. Id. at 115-117.

Second, in order for liability to attach to acts outside the window, an act contributing to the hostile work environment must be shown to have occurred *inside* the window. Id. at 105. Here, Plaintiff's claim of a hostile work environment concerns co-workers making comments about catching HIV, comments about his sexual orientation, and a comment about wiring Plaintiff's mouth shut.[7] None of these comments, however, occurred within the statutory period.[8] Therefore, Plaintiff's claims must stand, if at all, solely on the Defendants' actions between January 25, 2007, and his termination.

Under this rubric, then, the evidence is as follows: Plaintiff requested to work only eight-hour shifts three days a week; DRMC complied; Plaintiff continued to miss work; DRMC

---

[6] In the present case, the alleged discriminatory acts (in the retaliation and failure to accommodate claims) were the following: DRMC's failure to give Plaintiff his own phone; DRMC's failure to alter his employment schedule when requested; and DRMC's alleged retaliatory conduct following his complaint arising from an incident which occurred in November of 2006, culminating in his termination.
[7] At this stage, the comments are presumed to be actionable. A discussion of their relevance follows *infra*.
[8] Regardless of whether Plaintiff is attempting to proceed under a "serial violation" or a "systemic violation," he must show *some act* occurring within the limitations period. See Morgan, 536 U.S. at 107.

- 8 -

Case 4:10-cv-00055-JLK   Document 46   Filed 08/23/11   Page 8 of 16   Pageid#: 589

terminated him. In the 300-days preceding his Charge of Discrimination with the EEOC, DRMC accommodated Plaintiff in exactly the manner he requested. Therefore, his failure to accommodate claim should fail. Plaintiff did not undertake any protected activity; therefore, his retaliation claim must fail. And finally, no acts of discrimination occurred to contribute to a hostile working environment so "severe and pervasive" that it altered Plaintiff's employment; therefore, his hostile work environment claim fails. On this basis alone, summary judgment would be appropriate. For the reasons stated below, each count also fails on the merits.

> C. Plaintiff Cannot Establish a *Prima Facie* Case of Failure to Accommodate Because He Could Not Attend with Regularity and Because DRMC Did Not Deny an Accommodation Within the Limitations Period

To establish a prima facie case of failure to accommodate under the ADA, the Plaintiff must show that: (1) he had a disability under the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of the job with reasonable accommodations; and (4) his employer refused to make reasonable accommodations. Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001). The ADA does not define "reasonable accommodations," but lists making facilities accessible to disabled employees and "job restructuring, part-time or modified work schedules" as examples. 42 U.S.C. § 12111(9) (2010).

With regard to prongs one and two of the prima facie case of failure to accommodate, Plaintiff clearly can show both. First, HIV, even in non-symptomatic stages, is a *per se* disability. See Bragdon v. Abbott, 524 U.S. 624, 637 (1998) ("In light of the immediacy with which the virus begins to damage the infected person's white blood cells and the severity of the disease, we hold [HIV] is an impairment from the moment of infection."). Secondly, there is no dispute that Plaintiff's supervisors were aware of his HIV-positive status. Therefore, the only

issues for consideration are whether Plaintiff can carry his burden to survive summary judgment on the remaining two elements.

It is the final two prongs that serve as the death knell to Plaintiff's claim and that warrant summary judgment on behalf of DRMC. In order to establish prong three, Plaintiff would have to show that he could perform the job with a reasonable accommodation (he has conceded that he could not perform the job without one). Plaintiff has offered no evidence to support the claim that he could actually perform the job with this reduced schedule; the only evidence is that his illness caused him to miss work frequently. Obviously, Plaintiff's position was one in which his attendance was crucial. To succeed in his claim, he would not only have to prove that he was capable of performing the essential functions of his job, but he would also have to show that he was "able to demonstrate those skills by coming to work on a regular basis." Tyndall v. Nat'l Educ. Centers, Inc. of California, 31 F.3d 209, 213 (4th Cir. 1994). On the record before me, there is simply no evidence that he could do so.

From January 1, 2007, until his termination, Plaintiff was scheduled to work more than three times a week only once; every other week he was scheduled to work three or fewer days. Still, he missed work on January 24, 25, and 26; March 4, 26, and 27; and April 9, 10, and 24. He worked thirty-eight days and missed nine (not including his requested days off), meaning he missed work approximately 20% of the time on his new, reduced-hours schedule. (See Clatanoff Decl. Ex. A; Def.'s Reply Br. Ex. 1.) Although Plaintiff's illness is tragic and its deleterious effect on his ability to work regrettable, the ADA does not impose an obligation on an employer to hire and retain someone who is unable to attend work and do the job. See Schneider v. Giant of Maryland, LLC, 389 Fed. App'x 263, 271 (4th Cir. 2010) (noting that the ADA does not require an employer "to go out of his way to provide an accommodation for a disabled employee

. . . ."). Because he cannot perform the essential functions of the job—namely, attending—DRMC is entitled to summary judgment.

Moreover, even if Plaintiff could attend with regularity, DRMC did not fail to offer reasonable accommodations. Within the limitations period, DRMC scheduled Plaintiff *exactly* as requested. In the absence of some refusal, a claim for failure to accommodate cannot stand. As Plaintiff is unable to offer any evidence of DRMC's failure to grant an accommodation within the relevant time period, summary judgment is appropriate.

Additionally, with regard to Plaintiff's request for a personal phone, not only did the alleged "denial" not occur within the limitations period, but there is no evidence to suggest that the reasonable accommodation of a personal phone would have allowed Plaintiff to come to work regularly. As he admitted, he has no idea whether he ever suffered illness and missed work because a co-worker used "his" phone. In the absence of such evidence, and in the absence of any competent evidence that would suggest Plaintiff's attendance issues would abate on the reduced-hours schedule, summary judgment is appropriate.

> D. <u>Plaintiff's Retaliation Claim Fails Because His Belief That He Was Engaged in a Protected Activity Was Not Objectively Reasonable and Because The Alleged Protected Activity Occurred Outside the Limitations Period</u>

To establish a prima facie case of retaliation under the ADA, a Plaintiff must show: (1) that he engaged in conduct protected by the ADA; (2) that he suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. <u>Williams v. Brunswick Co. Bd. of Ed.</u>, No. 10-1884, 2011 WL 2938073, at *1 (4th Cir. July 22, 2011) (citing <u>Freilich v. Upper Chesapeake Health, Inc.</u>, 313 F.3d 205, 216 (4th Cir. 2002)). In addition, one who claims retaliation for opposing an employment practice must establish, at a minimum, that he had a good-faith belief that the

- 11 -

conduct opposed or complained of violated the ADA. Mason v. Wyeth, Inc., 183 Fed. App'x 353, 363 (4th Cir. 2006); see Freilich, 313 F.3d at 216 ("A plaintiff need not establish that the conduct she opposed actually constituted an ADA violation. But a complainant must allege the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA."). The reasonableness of the belief is also a question for objective review. Cf. EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406-07 (4th Cir. 2005).

Plaintiff alleges that he was asked to engage in direct patient care and that, when he complained to his supervisors, he was disciplined. He believes that he was subject to hyper-intensive scrutiny of his attendance because he complained, and that he was "written up" for past infractions. Although the Fourth Circuit does not appear to have addressed the objective reasonableness inquiry in the ADA context, it has addressed it under Title VII. See Jordan v. Alternative Resources Corp., 458 F.3d 332, 339-40 (4th Cir. 2006). "Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment"—I find the Title VII "objectively reasonable belief" analysis to be persuasive. Fox v. General Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001); see also Roberts v. Rayonier, Inc., 135 Fed. App'x 351, 357 (11th Cir. 2005) (employing the "objectively reasonable" test in the ADA context); Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311-12 (11th Cir. 2002) (same).

Plaintiff's retaliation claim must fail for a simple reason: Plaintiff could not have reasonably believed that he was opposing an unlawful employment practice when he complained to his supervisor about being asked to engage in direct patient care. Plaintiff could not have been complaining because he was asked to violate an accommodation; his own testimony makes clear that his exclusion from direct patient care was *not* an accommodation. Rather, he was simply

asked to do something that was not his job. His own testimony establishes that his exclusion from patient care was mandated before DRMC ever knew of his HIV status:

> At the end of our interview, she told me she would like to go ahead and get a process and get me hired, and I asked her then, I said, Now is this direct patient care? And she said, Absolutely not, your duties are secretarial work at the desk. And I disclosed to her, I said, Well, between you and I, I am HIV and don't want to do direct patient care, so therefore, if this job requires direct patient care, I am sorry, I am not interested. And she reassured me that no, there is no direct patient care.

(Posante Dep. 22:24-23:10.) Before DRMC was ever aware of Plaintiff's disability, he was excluded from patient care. Therefore, his complaint could not have been a protected activity because asking one to perform a task that is not part of his generic job duties is not an "unlawful employment practice." Therefore, *complaining* about such a request cannot reasonably be viewed as *opposing* an unlawful employment practice. For this reason, summary judgment is appropriate.

  E. <u>There Was No Hostile Work Environment As the Conduct Was Not Severe or Pervasive, and Because the Comments Alleged to Constitute The Hostile Work Environment Bore No Relation to Plaintiff's Disability</u>

Plaintiff's final claim is for a hostile work environment, a claim which is permissible under the ADA. See Fox, 247 F.3d at 172, 176. To establish a claim for a hostile work environment, Plaintiff must prove: (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege or employment; and (5) some factual basis exists to impute liability for the harassment to the employer. See Fox v. General Motors, 247 F.3d 169, 177 (4th Cir. 2001). Although I have concluded that Plaintiff was not a qualified individual under the first prong because he could not

perform the essential functions of his job due to his excessive absenteeism, his claim of a hostile work environment would fail under the third and fourth prongs as well.[9]

First, there is no indication that the comments were based on his disability (save for the one-time inquiry regarding catching HIV from using the same phone Plaintiff used). He claims he was forced to withstand the "harsh tongue of personnel on his unit," and that one co-worker mused Plaintiff "should have his mouth wired shut." Nothing links those comments to his HIV status, and his claims that offensive language was directed at his perceived sexual orientation are not protected under the ADA. See 42 U.S.C. § 12112(a) (2011) ("No covered entity shall discriminate against a qualified individual on the basis of *disability* . . . ." (emphasis added)).

The fourth prong—severe and pervasive—likewise fails. Generally speaking, a few, minor incidents are not "severe and pervasive" such that they alter the conditions of employment. See Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996). Hostile work environment claims exist "[w]hen [a] workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993) (internal citations omitted); accord Coulson v. The Goodyear Tire & Rubber Co., 31 Fed. App'x 851, 858 (6th Cir. 2002) (applying the Harris standard to an ADA hostile work environment claim). Moreover, the "standards for judging hostility are sufficiently demanding to ensure that Title VII [and thus the ADA under Fox] does not become a 'general civility code.'" Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 Fed. App'x 351, 354 (4th Cir. 2009) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).

---

[9] Although the claim fails on prongs one, three, and four, I make no determination on the sufficiency of the evidence with regard to prongs two or five.

Case law under Title VII (which is persuasive in ADA cases, see Fox, 247 F.3d at 176) establishes that a few isolated incidents, unless extremely serious, do not meet the demanding threshold prong four is designed to impose. In determining whether actions constitute a hostile work environment, courts consider: (1) frequency; (2) severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) the psychological harm, if any, suffered by the Plaintiff as a result. See Harris, 510 U.S. at 23; Hopkins, 77 F.3d at 757-48 (holding repeated, explicit sexual comments and physical contact insufficient to create a hostile work environment under Title VII). Simply because conduct may be deemed "inappropriate" does not mean it is actionable under federal law. Cf. Shaver v. Dixis Trucking Co., No. 97-1954, 1999 U.S. App. LEXIS 9862, at *8-9 (4th Cir. 2002) (finding conduct "inappropriate" but not actionable harassment under Title VII).

The only alleged comment that could reasonably be related to Plaintiff's disability was the when a co-worker asked if she could catch HIV from using the same phone as Plaintiff. This one-time question was certainly not frequent or severe, and there is no evidence that it was threatening, interfered with Plaintiff's job, or caused any harm. A one-time, off-hand comment does not create a hostile work environment unless extremely severe. [10] Cf. Jordan, 458 F.3d at 339-40 (holding that a one-time comment, albeit offensive, does not create a hostile work environment under Title VII as a matter of law). For these reasons, Plaintiff's claim of a hostile work environment fails, and Defendants are entitled to summary judgment.

---

[10] It could conceivably be argued that Plaintiff's co-worker's comment that someone should "wire [Plaintiff's] mouth shut" may have been directed at Plaintiff's disability, namely the transmission of HIV through saliva. Even assuming this comment was related to Plaintiff's disability, it does not change the analysis. These two isolated comments do not serve to create a working environment "permeated with . . . intimidation, ridicule, and insult . . . ." Harris, 510 U.S. at 21-22.

## V. CONCLUSION

Because the only evidence in the record establishes LifePoint did not exercise any control over Plaintiff's employment, summary judgment is appropriate to LifePoint on all counts.

Due to his excessive absenteeism, Plaintiff is not a qualified individual under the ADA because he could not perform the essential functions of his job. Moreover, his claim for failure to accommodate is time barred because no allegedly discriminatory practices took place within the statutory period.

With regard to Plaintiff's claim of retaliation, it is likewise time barred. Additionally, as Plaintiff was not complaining about DRMC's violation of an accommodation or a hostile work environment, it was not objectively reasonable to believe that he was opposing an unlawful employment practice. In the absence of this objectively reasonable belief, his claim fails as a matter of law.

Finally, Plaintiff's hostile work environment claim fails because: (1) he was not a qualified individual under the ADA due to his excessive absenteeism; (2) there is no indication that the comments he claims created the hostile work environment were related to his disability; and (3) the few, isolated comments were not "severe and pervasive" such that they altered the "terms and conditions of his employment." For all these reasons, Defendants' Motion for Summary Judgment must be granted.

The clerk is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 23rd day of August, 2011.

s/Jackson L. Kiser  
Senior United States District Judge